UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAJ. MATTHEW SEEGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil A. No. 17-639 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEF ON JURISDICTION**

Defendants United States Department of Defense ("DoD"), *et al.*, by and through undersigned counsel, pursuant to the Court's instructions at the July 26, 2017, hearing,[1] respectfully submit the following response and opposition to Plaintiffs' August 9, 2017, supplemental brief on jurisdiction.

Plaintiffs bring this suit under Sections 706(1) (for agency action unreasonably delayed) and 706(2)(A) (for arbitrary and capricious agency action) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1) and 706(2)(A), 28 U.S.C. § 1331, and 28 U.S.C. §§ 2201-2202. The Court should dismiss Plaintiffs' claims for lack of jurisdiction and reject their contentions that the APA does not require a separate statutory predicate and that Department of Defense Instruction ("DoDI") 6055.05, *Occupational and Environmental Health (OEH)* (Nov. 11,

---

[1] The Court instructed the parties to "address the issue of jurisdiction under the complaint as framed." Transcript of Preliminary Injunction Hearing, July 26, 2017, at 8:16-17.

2008),[2] creates mandatory duties enforceable under the APA. This policy issuance was not promulgated pursuant to a relevant statute, and the challenged actions concern military matters committed to agency discretion. Plaintiffs' claims are thus nonjusticiable under Sections 701(a)(2) and 702 of the APA, 5 U.S.C. §§ 701(a)(2) and 702.

I.   **Standing**

A plaintiff has standing to obtain judicial review of federal agency action under the APA when the plaintiff "show[s], at the outset of the case, that he is injured in fact by agency action and that the interest he seeks to vindicate is arguably within the 'zone of interests to be protected or regulated by the statute' in question." *Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 127 (1995); *Nat'l Fed'n of Fed. Emps. v. Cheney*, 883 F.2d 1038, 1052-53 (D.C. Cir. 1989). For purposes of the APA and the zone of interest test, "[t]he relevant statute, of course, is the statute whose violation is the gravamen of the complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990). In *Cheney*, the D.C. Circuit found that while the plaintiffs' interest may have been within an OMB circular's zone of interest, the circular did not suffice as support for standing because Section 702 of the APA "clearly requires that the party seeking relief be 'legally wronged ..., or adversely affected or aggrieved ... within the meaning of a *relevant statute*.'" 883 F.2d at 1043 (quoting 5 U.S.C. § 702) (emphasis in original). The circular was not a statute, and it merely set forth executive branch policy. *Id.*

Here, as in *Cheney*, Plaintiffs cannot satisfy the second prong of the standing test: that the interest Plaintiffs seek to vindicate falls within a statute's zone of interest. Plaintiffs argue that Defendants have adopted procedures for conducting occupational and environmental health risk

---

[2] http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/605505p.pdf.

assessments, found in DoDI 6055.05, which are mandatory and binding on commanders. However, Plaintiffs' reliance on this DoD instruction (or on DoD Directive ("DoDD") 4715.1E, *Environment, Safety, and Occupational Health (ESOH)* (March 19, 2005),[3] to which Plaintiffs also refer) is misplaced. Plaintiffs have not identified any environmental or health statute, and Defendants have found none, pursuant to which DoDI 6055.05 or DoDD 4715.1E was issued. Nor could Plaintiffs find in the text of the instruction or the directive any indication that these policy issuances were intended to create rights or benefits for Plaintiffs. Therefore, the issuances on which the complaint relies cannot confer standing on Plaintiffs to bring APA claims. *See, e.g.*, *MCI Telecomms. Corp. v. Army & Air Force Exch. Serv.*, Civ. A. No. 95-0607 RMU, 1995 WL 317435, at *7 (D.D.C. May 9, 1995) (holding that because no statute served as the basis for the DoD instruction and procedures at issue, and because these documents showed no intent to create individual benefits or rights, the plaintiff lacked standing to seek judicial review under the APA).[4]

Moreover, DoDI 6055.05 and DoDD 4715.1E lack sufficient formality to have the force and effect of law. *Id.* at *24. Rather, these issuances simply provide internal policy and procedural guidance expressly intended for commanders to make, at their own discretion, informed risk decisions by "balancing operational benefits against the potential for adverse

---

[3] http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/471501p.pdf.

[4] 5 U.S.C. § 301, however, provides the heads of the military departments with a general "housekeeping" authority to prescribe rules for the conduct of their department's employees: "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."  Although the policies discussed in this case are not promulgated regulations, in the absence of other statutory authority, their issuance is within the authority of the general housekeeping statute.

health effects." DoDI 6055.05, Encl. 3, §§ 1.a.(2) and 1.c.(3)(b); *see id.* ("The standard for a risk decision is leadership at the appropriate level of authority making an informed decision to either control hazards or to accept risks."). Plaintiffs have not identified a specific, nondiscretionary duty in either issuance, much less any statute, that could provide them standing in this case. "The law is well settled that internal guidelines cannot create a cause of action in federal court. To be given the force and effect of law, a regulation must prescribe 'substantive' or 'legislative' rules rather than merely 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.' [And] the regulation must be promulgated pursuant to a statutory grant of authority and 'must conform with any procedural requirements imposed by Congress.'" *Wright v. FBI*, Civ. A. Nos. 02-915 (GK), 03-226 (GK), 2006 WL 2587630, at *10 (D.D.C. July 31, 2006) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979)). [5]

## II.     The Absolute-Agency-Discretion Exception to APA Review

Although there is some split in this District as to whether, in addition to 28 U.S.C. § 1331, another statutory basis is required for subject-matter jurisdiction under the APA,[6] the

---

[5] Plaintiffs have sought additional investigation and "remediation" through a CERCLA process despite CERCLA's inapplicability at Camp Justice. If CERCLA and its procedures were legally applicable at Camp Justice, this Court would likely lack jurisdiction to hear a challenge until all response actions were complete. CERCLA effectuates a "blunt withdrawal" of jurisdiction regardless of the law under which a challenge is brought. *See* 42 U.S.C. § 9613(h); *Anacostia Riverkeeper v. Wash. Gas Light Co.*, 892 F. Supp. 2d 161, 169 (D.D.C. 2012). Similarly, to the extent Plaintiffs are claiming personal injury, this Court would also lack jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b). There is no liability for such a claim based on the performance of a discretionary function. 28 U.S.C. §2680(a). Likewise, the "Feres Doctrine" bars FTCA claims against the United States by military personnel where injuries are suffered "incident to service," *Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004), and the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.*, provides the exclusive remedy for the disability or death of a federal civilian employee resulting from personal injury sustained while in the performance of his or her duty. 5 U.S.C. § 8116(c); *Scott v. U.S. Postal Serv.*, 258 Fed. Appx. 333 (D.C. Cir. 2007).

[6] *Compare, e.g., Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 121-22 (D.D.C. 2015) (finding that the court lacked jurisdiction over APA claim because there

4

APA itself provides threshold requirements for judicial review that Plaintiffs have failed to satisfy. *See, e.g., Watervale Marine Co. v. Dep't of Homeland Sec.*, 55 F. Supp. 3d 124 (D.D.C. 2014) (holding that APA claim was nonjusticiable under § 701(a)(2) because the challenged action concerned a matter "committed to agency discretion by law"). Plaintiffs' claims fall in this category of nonjusticiability and should be dismissed.

To be sure, there is a presumption in favor of judicial review of administrative decisions by federal agencies. *See id.* at 135. Section 701(a) of the APA establishes, however, two hurdles that each plaintiff must overcome to obtain judicial review under Section 706(1) or 706(2)(A): one, if the particular statute that the agency allegedly violated expressly precludes judicial review, 5 U.S.C. § 701(a)(1); and two, if the challenged action is "committed to agency discretion by law," *id.* § 701(a)(2); *see Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *Sierra Club v. Jackson*, 648 F.3d 848, 854-55 (D.C. Cir. 2011).

Under the "committed to agency discretion by law" exception, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *see Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) ("If no 'judicially manageable standard' exists by which to judge the agency's action, meaningful judicial review is impossible and the courts are without jurisdiction to review that action."). "[J]udicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes, but if a court examines all these sources

---

was no final agency action and thus judicial review under § 706(2) was precluded); *Lakner v. U.S. Dep't of Defense*, 755 F. Supp. 2d 132, 137 (D.D.C. 2010) (finding that the court lacked jurisdiction under the APA to compel agency action unlawfully withheld or unreasonably delayed where no statute or regulation required agency to act); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 52 (D.D.C. 2008) (holding that the court lacks jurisdiction over APA claim because "no statute or regulation cited . . . expressly creates a mandatory duty owed by [the agency] to the individual."); *with, e.g., Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 65 (D.D.C. 2014).

and concludes that there is, in fact, 'no law to apply,' judicial review will be precluded." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). "In determining whether agency statements create such a standard, the Court inquires whether the statements create binding norms by imposing rights or obligations on the respective parties." *Steenholdt*, 314 F.3d at 638.

In this case, the DoD issuances on which Plaintiffs' complaint relies very clearly commit the protection of DoD personnel from occupational or environmental exposures to agency discretion. *See* DoDD 4715.1E, § 5.9.4 ("The Heads of the DoD Components shall . . . [i]mplement ESOH system(s), in compliance with this Directive, that best suit their mission needs."); DoDI 6055.05, Encl. 3, § 1.a.(2) ("OEH risk information allows commanders to make informed risk decisions . . . ."); *id*. § 1.c.(3)(b) ("Commanders will determine which risks are acceptable and unacceptable by balancing operational benefits against the potential for adverse health effects."); *id.* § 1.c.(2)(c)[7] (explaining that in the absence of DoD health standards, a technical support center such as the Navy and Marine Corps Public Health Center may supply the guidance for determining what health standards to apply); *see also Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002) ("The military has broad authority and discretion in dealing with its [deployable] personnel, both military and civilian, including the protection of their health."); *Brehner v. Fed. Aviation Admin.*, 294 F.3d 1344, 1348 (Fed. Cir. 2002) (noting that a policy "is not . . . a black letter rule that the agency is required to follow in all cases without regard to the circumstances of the particular situation before it").

---

[7] "[Commanders] [d]etermine whether exposures are acceptable, unacceptable and requiring control measures and medical surveillance, or uncertain and requiring additional exposure characterization. Where [DoD] health standards are not available to make this determination, *make a local determination based on best available guidance from the … technical support center* and document the basis for the determination." DoDI 6055.05, § 1.c.(2)(c) (Emphasis added).

Indeed, DoDD 4715.1E and DoDI 6055.05 serve as guidance documents and, thus, are presumed non-binding, given the lack of evidence or practice to the contrary. *See Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 228 (D.C. Cir. 2007) (holding Human Health Risk Assessment Protocol was a non-binding statement of EPA policy because, among other factors, the agency did not treat it as binding, permits did not depend on compliance, and the document did not command, require, order, or dictate terms); *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[L]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice, but not the sorcerer himself."); *Jacobo v. United States*, 853 F.2d 640, 641 (9th Cir. 1988) (holding that violation of the "Naval Ships Technical Manual," placing a duty on the commanding officer of a vessel to assure safe conduct of operations according to applicable standards and laws, "is not a regulation and does not have the force of law").

While guidance documents may be binding if they threaten enforcement against, or create legal consequences for, a third party regulated entity, neither situation is present here. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000); *Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000). The documents and procedures referenced in Plaintiffs' complaint only provide general policy and internal guidance to inform and assist agency personnel in the exercise of their discretion. "But policy documents do not have the force of law." *Watervale Marine*, 55 F. Supp. 3d at 146 (rejecting the contention that an

agency's "internal policy manuals" and "a variety of secondary sources" established a mandatory duty); *see Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (stating that "policy statements, agency manuals, and enforcement guidelines" all "lack the force of law"); *Jolly v. Listerman*, 672 F.2d 935, 940-41 (D.C. Cir. 1982) (stating that "not every piece of paper emanating from" an agency is a binding rule, particularly where the language is more "informative" than "mandatory"). Therefore, although Defendants through these policy issuances place a priority on health protection, the issuances do not afford individual rights or benefits to Plaintiffs (and similarly situated personnel and contractors) and cannot be the basis for Plaintiffs' APA claims.

Another factor supporting the conclusion of nonjusticiability is the nature of the administrative action at issue. This factor refers to administrative decisions that "the Supreme Court and the D.C. Circuit treat as presumptively unreviewable"—for example, an agency's refusal to take enforcement action is, "by its very nature, an unreviewable decision." *Watervale Marine*, 55 F. Supp. 3d at 138 (citations and other examples, such as prosecutorial discretion, omitted). "Likewise, it is established in this circuit that 'executive branch decisions involving complicated foreign policy matters[,]' or sensitive matters of national security[,] are nonjusticiable by nature." *Id.* (citations omitted).  Operational military decisions, particularly concerning military commissions, fall very much within this "presumptively unreviewable" category of matters involving national security. "The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially military judgments." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Judicial review in this case would require the court to evaluate military decisions involving the balancing of risk to personnel against mission objectives. Such decisions, however, are precisely the type of "complex, subtle,

8

and professional decisions within the military's professional judgment and beyond the courts' competence." *Harris v. Kellogg Brown & Root Serv's, Inc.*, 724 F.3d 458, 478 (3d Cir. 2013); *see Wu Tien Li-Shou v. United States*, 777 F.3d 175 (4th Cir. 2015); *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836 (D.C. Cir. 2010) (*en banc*). Plaintiffs' APA claims should therefore be dismissed as nonjusticiable.

### III. Limitations on the Scope of APA Review

Section 706 of the APA provides that federal courts may review two types of claims: those seeking to compel certain required agency actions not yet taken (§ 706(1)), and those seeking to set aside arbitrary "agency actions" (§ 706(2)). Significantly, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *PETA v. USDA*, 797 F.3d 1087, 1098 (D.C. Cir. 2015) (noting that limitation that the allegedly withheld action be one that the agency was required to take "rules out judicial direction of even discrete agency action that is not demanded by law"). Thus, a plaintiff seeking to invoke jurisdiction under the APA to compel agency action must allege that the agency had a duty to perform a nondiscretionary act. *See id*.

The conditions for jurisdiction are not satisfied here, as there is no legal requirement for Defendants to take any precise, definite acts by a date-certain. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (courts will only compel the performance of a "clear nondiscretionary duty"); *see also Norton*, 542 U.S. at 66 (noting that section 706(1) carried forward "the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs-principally writs of mandamus under the All Writs Act"). Plaintiffs have not pointed, and cannot point, to any specific duty demanded by statute. Neither DoDD 4715.1E nor

DoDI 6055.05 have the "force of law," as previously discussed. Nor do they require that their described processes be performed within any specific timetable. Accordingly, Plaintiffs' claims to compel agency action under Section 706(1) of the APA and the All Writs Act must be dismissed for lack of jurisdiction.

Dated: August 16, 2017

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  */s/ Jason T. Cohen*
JASON T. COHEN, ME Bar #004465
Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Fax: (202) 252-2599
Email: jason.cohen@usdoj.gov