## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAJ. MATTHEW SEEGER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 1:17-cv-639-RMC |
| | ) |
| v. | ) |
| | ) Judge:  Rosemary M. Collyer |
| UNITED STATES DEPARTMENT OF | ) |
| DEFENSE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUPPLEMENTATION OF ADMINISTRATIVE RECORD AND FOR DISCOVERY

# TABLE OF CONTENTS

**Page**

I.    FINAL AGENCY ACTIONS UNDER REVIEW ..................................................... 1

II.    SUPPLEMENTATION OF ADMINISTRATIVE RECORD........................................... 1

    A.    Appendices to the Final Public Health Review Report for Camp Justice (March 3, 2017). .............................................................................. 3

    B.    The May 19, 2011 Housing Policy for OMC Personnel at Guantanamo Bay. ...................................................................................... 4

    C.    The April 24, 2018 "Draft OMC Housing Policy" and any documents reflecting finalization or implementation of this policy. ....................... 5

    D.    All requests submitted by or on behalf of the Plaintiffs or their defense team members requesting "hard housing" accommodation, any responses thereto, and any other documentation of housing assignments. ............. 6

    E.    All documents (created at any time) reflecting the assignment of workspace within Camp Justice to the Plaintiffs' defense team............ 7

    F.    Written orders directing Plaintiffs and their defense team members to report to Camp Justice. ........................................................... 8

    G.    The May 11, 2018 "Memorandum for the Convening Authority" regarding the Draft OMC Housing Policy, submitted by B.Gen. Baker on behalf of the defense teams (including the Plaintiffs)........................................ 10

    H.    Contrary Expert Analysis................................................................ 11

    I.    Conclusion. ................................................................................. 12

III.    DISCOVERY................................................................................. 12

IV.    CONCLUSION................................................................................ 14

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Wildlands v. Kempthorne,*
 530 F.3d 991 (D.C. Cir. 2008) .............................................................................................2

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior,*
 143 F. Supp. 2d 7 (D.D.C. 2001) .................................................................................12, 13

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
 401 U.S. 402 (1977) ..............................................................................................................2

*Forest Cty. Potawatomi Cmty. v. United States,*
 270 F. Supp. 3d 174 (D.D.C. 2017) .....................................................................................2

*Marcum v. Salazar,*
 751 F. Supp. 2d 74 (D.D.C. 2010) .......................................................................................2

STATUTES

5 U.S.C. § 706 .................................................................................................................................2

OTHER AUTHORITIES

Fed. R. Civ. P. 30(b)(6) ................................................................................................................13

This Administrative Procedure Act case seeks judicial review of Defendants' repeated orders and assignments requiring the Plaintiffs to live and work in spaces at Camp Justice that expose them to dangerous toxins, such as formaldehyde.  Pursuant to the scheduling order entered by the Court, Defendants filed their Certified Index to the Administrative record on September 6, 2018.  However, the record, as certified by Defendants, is demonstrably incomplete.  This Motion seeks the supplementation of the administrative record to include known documents that have been omitted, as well as discovery to explore what other relevant documents may exist, to ensure that the Court has an adequate record upon which to decide this case.

## I.       FINAL AGENCY ACTIONS UNDER REVIEW

The reviewable final agency actions at issue in this case, as articulated and limited by the Court in its Order on Defendants' Motion to Dismiss, are Defendants' assignment of Plaintiffs to live and work in contaminated areas at Camp Justice during work trips.  *See* Memorandum Opinion, ECF No. 35 (March 30, 2018), at 29.  Plaintiffs allege that these decisions were arbitrary and capricious because, among other reasons, Defendants (1) failed to conduct an adequate investigation of environmental contamination and toxins at Camp Justice, in compliance with applicable DoD policies and guidance, and (2) failed to appropriately balance the risks posed by environmental contamination at Camp Justice against operational needs, avoiding any unnecessary risks to personnel, as dictated by internal DoD policies and guidance. *See* Complaint for Declaratory and Injunctive Relief, ECF No. 1, at 31-35.

## II.      SUPPLEMENTATION OF ADMINISTRATIVE RECORD

Supplementation of the administrative record is necessary, in this case, to ensure that all documents and information that were actually before, and considered by, the Defendants may be considered by the Court in its review of the Defendants' final agency actions.

When a court reviews a final agency action under the Administrative Procedure Act ("APA"), "[t]hat review is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1977); *see also* 5 U.S.C. § 706 (review is based on "the whole record or those parts of it cited by a party"). Under normal circumstances, "[a] court should consider neither more nor less than what was before the agency at the time it made its decision." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). When, in an APA action, the agency fails to include certain documents in the certified administrative record that were before it when it made its decision, "whether by design or accident, then supplementation is appropriate." *Id.* "[A]n agency 'may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made.' Nor may the agency exclude information from the record simply because it did not 'rely' on the excluded information in its final decision. Rather, 'a complete administrative record should include all materials that 'might have influenced the agency's decision.''" *Forest Cty. Potawatomi Cmty. v. United States*, 270 F. Supp. 3d 174, 178 (D.D.C. 2017) (internal citations omitted). The party seeking supplementation must put forth "concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.*[1]

Here, many key documents—which the Plaintiffs know to exist and to have been before the agency—were omitted from the administrative record certified by the Defendants on

---

[1] In addition, the administrative record may be supplemented with documents not considered by the agency to facilitate court review under certain circumstances: "(1) [T]he agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) the district court need[s] to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (internal quotations omitted).

September 6, 2018.  The omission of these documents will prevent effective review of the final

agency actions at issue in this case.  Furthermore, many of these documents reveal the

arbitrariness of Defendants' decisions, such that their exclusion presents a skewed record for the

Court's review.  Particularly in an action like this one alleging arbitrary agency decision-making,

the Court must see the full range of facts that were before the agency, to know which facts the

agency may have ignored, misunderstood, or inappropriately discounted.

Each category of document is addressed below, in turn, and the documents themselves

are attached as exhibits, where available.

A.     **Appendices to the Final Public Health Review Report for Camp Justice (March 3, 2017).**

First, Plaintiffs respectfully request that the administrative record be supplemented to

include all Appendices to the Final Public Health Review Report ("Report") for Camp Justice

(dated March 3, 2017).  At present, the index to the certified administrative record states that the

"Final Public Health Review Report for Camp Justice" is included.  However, the Bates range

corresponding to this document reflects inclusion of only an incomplete document:  the body of

the Report.  The full and complete version of this Report also includes a number of Appendices,

which are referenced throughout the body of the Report and which have been previously

produced and filed in this case.  *See* Exhibits to ECF No. 11.

The Appendices to this Report must be included in the administrative record for two key

reasons.  First, the body of the Report (which Defendants did include in the record) is incomplete

without these Appendices.  They are referenced throughout and incorporated into the body of the

Report itself, by its very terms.  Second, the Appendices include information that is adverse to

the Defendants and that reveals the arbitrariness of the agency actions being reviewed in this

case.  For example, Appendix C to this Report includes the Non-Cancer Hazard Quotients

calculated by Navy risk assessors for different exposure scenarios experienced by Camp Justice personnel.  This document shows that for some exposure scenarios, the Navy determined that Camp Justice personnel were exposed to conditions with Non-Cancer Hazard Quotients ranging from just under 1 to *more than 5* – well above the quotient of 1 that is deemed the acceptable risk limit under the EPA standards that the Navy applied in this risk assessment process.  These Non-Cancer Hazard Quotients do not appear in the body of the Report—only in this Appendix.  Thus, by excluding the Appendices, Defendants exclude evidence that contradicts their conclusions, thereby presenting an incomplete and misleading record upon which to evaluate the agency actions at issue in this case.[2]  Accordingly, all Appendices to the Final Public Health Review Report for Camp Justice should be included in the administrative record.

> **B.     The May 19, 2011 Housing Policy for OMC Personnel at Guantanamo Bay.**

The administrative record should also be supplemented to include the May 19, 2011 Housing Policy for OMC Personnel at Guantanamo Bay ("Housing Policy").  This document was referenced in the declaration of Wendy A. Kelly, which accompanied the certified administrative record (*see* ECF No. 39-1, at 2), and was attached to Ms. Kelly's earlier declaration filed in the case, which also accompanied the certified administrative record (*see* ECF No. 39-1, at 22-25).  However, it was not listed among the contents of the administrative record itself.

---

[2] Defendants knew the significance of these Appendices, as Plaintiffs relied on them heavily at the preliminary injunction hearing in this case.  Given that they are attachments to, and are referenced throughout, the Final Public Health Review Report—the body of which the Defendants included in the Administrative Record—Defendants' exclusion of these appendices appears to be a troubling tactical decision.  This is among the reasons, discussed below, that Plaintiffs seek discovery into the completeness of the administrative record as certified by Defendants.

This Housing Policy should plainly be a part of the administrative record.  Ms. Kelly herself states, in her declaration accompanying the certified administrative record, that this Housing Policy is the "current written direction that addresses where OMC personnel, including the Plaintiffs, are to be housed while working at [Naval Station Guantanamo Bay]."  *See* Declaration of Wendy A. Kelly, accompanying Certified Index of Administrative Record ("Kelly Declaration"), ECF No. 39-1, at ¶ 4.  The final agency actions under review in this case include Defendants' orders regarding where Plaintiffs are to be housed while working at Camp Justice.  Plainly, the written OMC policy governing such decisions (at least in part) is a document that was before the agency decisionmakers and that was considered when these agency decisions were made.  The administrative record should be supplemented to include it.

C.    **The April 24, 2018 "Draft OMC Housing Policy" and any documents reflecting finalization or implementation of this policy.**

A recently-issued Draft OMC Housing Policy ("Draft Policy") should also be produced and included within the administrative record.  This Draft Policy was issued on April 24, 2018.  *See* Exhibit 1, Memorandum re Draft OMC Housing Policy.  Although it is labeled as a "Draft," it appears to have been implemented in at least some respects.  *See* Exhibit 2, Memorandum for the Convening Authority, dated May 11, 2018, at 1 n.1.  And assuming that this Draft Policy is informing or governing decisions by OMC decisionmakers regarding the housing of Camp Justice personnel, it must be included in the administrative record, for the same reasons as articulated in Section II.B. above.[3]

---

[3] If Defendants assert that this Draft Policy has not been implemented in any way, contrary to the evidence set forth in the Memorandum at Exhibit 2, then discovery is appropriate to determine the extent of this policy's finality and implementation.

**D.      All requests submitted by or on behalf of the Plaintiffs or their defense team members requesting "hard housing" accommodation, any responses thereto, and any other documentation of housing assignments.**

The administrative record should also be supplemented with copies of all requests that have been submitted by or on behalf of the Plaintiffs or their defense team members requesting "hard housing" (*i.e.*, housing other than in the Containerized Housing Units or "CHUs" (also known as "Cuzcos"), and any written decisions regarding these requests or responses thereto from Defendant decisionmakers.  Plaintiffs have repeatedly made written requests for "hard housing," based on their concerns regarding environmental contamination and associated health hazards.  *See, e.g.,* Exhibit 3.  These requests, and the information contained within them, were plainly before the DoD decisionmakers when decisions were made regarding the assignment of Plaintiffs to particular housing.  Furthermore, to the extent that any documents or communications reflect decisions regarding or responses to those requests, those documents should also be part of the administrative record.

Based on the existing certified administrative record, it does not appear that Defendants have searched for or attempted to include such documents and communications.  Because of this failure, the certified administrative record presents an incomplete record of the information available to OMC when these housing authorization decisions were made.  In fact, the Plaintiffs repeatedly advised Defendants—including the OMC personnel responsible for housing assignments—of the basis of their concerns regarding the toxins present in these living spaces at Camp Justice and other concerns about the Cuzco housing.  This information was directly relevant to the agency decisions at issue in this case and was before the decisionmakers when they made their decisions.  These documents, therefore, should be included in the record on review before this Court.

**E.     All documents (created at any time) reflecting the assignment of workspace within Camp Justice to the Plaintiffs' defense team.**

Plaintiffs' defense team's assignment to particular workspaces at Camp Justice is also not adequately reflected in the administrative record.  To address this deficit, Ms. Kelly's declaration states that she is not aware of any written direction requiring the Plaintiffs' defense team to work in any particular workspace issued "either during the time the analyses were being conducted that culminated in the Final [Public] Health [Review] Report or following completion of those analyses and publication of the Final [Public] Health [Review] Report."  *See* Kelly Declaration, ECF No. 39-1, at ¶ 8.

This date limitation—which appears to have constrained Defendants' search for record documents—has no basis in the facts of this case.  Plaintiffs and the legal defense team on which they serve were assigned to specific office space at Camp Justice years ago.  Since the Inspector General complaint was filed and the public health review began at Camp Justice, the Defendants have not provided Plaintiffs with alternative office space, nor have they suspended the military commission proceedings so as to obviate the need for office space.  The *de facto* consequence, therefore, is that Plaintiffs have been forced to continue reporting to Camp Justice for job-related responsibilities (discussed further in Section F below) and to work in the office space previously assigned to them.  Consequently, those previous orders assigning the Plaintiffs' defense team to office spaces within Camp Justice—*regardless of when they were issued*—are a relevant part of the administrative record in this case, because the Defendants decided to leave those assignments in place throughout the relevant time period.  The administrative record must be supplemented to include these documents.

F.      **Written orders directing Plaintiffs and their defense team members to report to Camp Justice.**

The administrative record must also be supplemented to reflect the repeated orders that Defendants have issued over the relevant time period that require Plaintiffs to report to Camp Justice for work-related responsibilities.  There are two known categories of documents that reflect these requirements:  (1) the military commission's orders setting hearing dates, and (2) the military commission requirements governing which attorneys must be in attendance for a hearing to proceed.  In combination, these orders and requirements mean that when the military commission judge sets a hearing in the case, the Plaintiffs' defense team are required to appear and represent their client.

However, the administrative record, as currently constituted, suggests that Plaintiffs themselves are the ones requesting permission to travel to Camp Justice—as if this travel were optional and within their discretion.  Nothing could be further from the truth.  Major Seeger, a uniformed member of the armed forces, is required to go where his commanding officer orders him to go.  In fact, the Plaintiffs' defense team recently attempted to protect one of its other uniformed team members from traveling to Camp Justice, when no safe hard housing was going to be provided to him.  In response, the defense team supervisor (B.Gen. Baker) issued a written order directing him to report to Camp Justice and to stay in Cuzco lodging, under penalty of court martial.  *See* Exhibit 4.  Civilian members of the defense teams likewise face significant risks and potential penalties if they refuse to travel to Camp Justice for an appointed hearing, as events from another similar case demonstrate.  In late 2017, civilian attorneys on a different military commission defense team, also working at Camp Justice, sought to withdraw from the representation and not appear at a hearing, based on their concerns that prosecutors were monitoring attorney-client privileged meetings.  The defense teams' supervisor, B.Gen. Baker,

excused the attorneys from the case and the hearing.  The military commission judge held B.Gen. Baker in contempt, as a result, and ordered him confined to his barracks for twenty-one days. *See* Courtney Kube, *Pentagon upholds contempt ruling against top Guantanamo lawyer*, <u>NBC News</u> (Nov. 22, 2017), https://www.nbcnews.com/news/military/pentagon-upholds-contempt-ruling-against-top-guantanamo-lawyer-n823496.  For a period of time, it was unclear whether the military commission judge would likewise attempt to hold the civilian attorneys themselves in contempt and to force them to appear in the proceedings.  *See* Carol Rosenberg, *Lone Navy defender refuses to question witness in USS Cole hearing*, <u>Miami Herald</u> (Nov. 3, 2017), https://www.miamiherald.com/news/nation-world/world/americas/guantanamo/article182558286.html.  As this incident demonstrates, the military commission court does not hesitate to take action to enforce its orders and to compel the attendance of defense team members, when the court believes their absence is preventing the military commission proceedings from moving forward.

Plaintiffs have no choice but to travel to Camp Justice and accept the housing and office assignments that are given to them, when hearings are set in their case.  Thus, these orders to appear in the military commission case are a material and relevant aspect of the agency actions under review in this case.  They must be included in the administrative record.

G.    **The May 11, 2018 "Memorandum for the Convening Authority" regarding the Draft OMC Housing Policy, submitted by B.Gen. Baker on behalf of the defense teams (including the Plaintiffs).**

The administrative record should also be supplemented to include the May 11, 2018 "Memorandum for the Convening Authority" providing feedback on the Draft OMC Housing Policy and, more broadly, the problems associated with housing defense team members (including Plaintiffs) in the Cuzcos.  This Memorandum includes, among other things, extensive discussion of the operational needs that favor housing defense team members in "hard housing," rather than Cuzcos.  *See* Exhibit 2.

One of the core issues presented in this case is whether Defendants acted arbitrarily and capriciously when they assigned Plaintiffs' defense team to lodging in Cuzcos with known health hazards, without appropriately weighing the health risks against Defendants' operational needs.  Consequently, it is important for this Court to understand what information regarding the operational needs related to housing at Camp Justice was before the agency at the time these housing decisions were made.

B.Gen. Baker's Memorandum provides key information on this issue, which was actually presented to Defendant decisionmakers—information that is contrary to Defendants' administrative decisions and their position in this litigation.  As B.Gen. Baker's Memorandum explains, Defendants' ability to efficiently conduct the military commissions, in accordance with applicable rules and regulations—one of DoD's "operational needs"—is actually *hindered* by DoD's repeated decisions to house military commissions personnel in Cuzcos at Camp Justice.  This information supports the Plaintiffs' argument that, far from being necessary for operational purposes, the health risks they bear from being housed in Cuzcos are unreasonable, unnecessary, and unwarranted by (even contradicted by) Defendants' operational needs.  Defendants' decision to house military commissions personnel in Cuzcos, rather than "hard housing" available

10

throughout this large, well-established, and modern Naval Station, is (at best) a decision of convenience.  It does not reflect a careful balancing of the health risks associated with the Cuzco housing and Defendants' actual operational needs.

The Memorandum for the Convening Authority should, therefore, be included in the administrative record.

### H.    Contrary Expert Analysis.

Finally, the administrative record should be supplemented to include any expert analysis that the Defendants received relating to the contamination and habitability of Camp Justice that contradicts the conclusions of the Public Health Review, including (but not necessarily limited to) the December 21, 2016 letter and attached expert report submitted to Convening Authority Paul L. Oostburg Sanz by the Plaintiffs' counsel at Venable LLP and Cohen Milstein Sellers & Toll PLLC.  This letter and expert report were provided to Mr. Oostburg Sanz via email on December 29, 2016.  *See* Exhibit 5.  Following his replacement as Convening Authority in early 2017, this letter and expert report were provided to the new Convening Authority, Robert Work, via his staff, on March 3, 2017.  *See* Exhibit 6.  Consequently, this letter and expert report are known to have actually been before key OMC decisionmakers when housing decisions at issue in this case were made, and they should have been included in the administrative record.

Furthermore, this expert analysis—like many of the other documents discussed in this motion—undermines and contradicts the agency's final decisions that are under review in this case.  This analysis is important evidence of the arbitrary nature of Defendants' decisionmaking.  By omitting this and any similar expert analysis from the certified administrative record in this case, Defendants are presenting a selective view of the evidence that was before them when they made the challenged decision, which they are not permitted to do under the Administrative Procedure Act.  This Court's review of the agency actions at issue in this case must be made on a

full and complete administrative record, reflecting the information and analysis that was before the agency decisionmakers.

Accordingly, the record should be supplemented to include this December 2016 letter and expert report. Additionally, Defendants should be ordered to search for and add to the administrative record any other similar analysis they received (from internal or external sources) that relates to the findings and conclusions of the Public Health Review.

## I.      Conclusion.

Plaintiffs respectfully request that the Court order Defendants to supplement the administrative record in this case to include the items discussed above. At present, the administrative record represents an incomplete and selective set of documents, which will not permit effective judicial review of the final agency actions at issue in this case, particularly on the key issue of arbitrariness. The documents discussed in this Motion are all known to exist and were actually before the agency decisionmakers. Their omission from the administrative record is, at best, an oversight. At worst, these omissions reflect a deliberate attempt to frustrate judicial review and hide facts that reveal the arbitrariness of the agency's decisions. Under these circumstances, supplementation is appropriate and necessary.

## III.    DISCOVERY

Plaintiffs also respectfully request that the Court permit limited discovery, to allow them the opportunity to explore how the administrative record was compiled in this case and what other documents and information may have been improperly omitted.

Discovery is permitted, in Administrative Procedure Act cases, where a plaintiff can demonstrate that the administrative record was not properly compiled. "To obtain discovery from an agency in an APA case, a party must overcome the standard presumption that the 'agency properly designated the Administrative Record.'" *Amfac Resorts, L.L.C. v. U.S. Dep't*

*of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).  Accordingly, "a party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the record," such as "material in the agency's possession indicative of bad faith or an incomplete record."  *Id*.

Plaintiffs have made this showing here.  As discussed in detail above, Defendants omitted from their certified administrative record:  (1) documents reflecting the actual decisions under review in the case; (2) agency policies governing the decisions under review in the case; and (3) documents and information relevant to the agency's analysis that are known to have been before the agency at the time the decisions were made.  Remarkably, these documents include the attachments to the Navy's Final Public Health Review Report.  Nothing could better reveal Defendants' bad faith effort to hide adverse facts.  These *known* omissions strongly suggest that there may be other relevant documents that should have been included in the administrative record, but were not, through either deliberate omission or inadequate searching.

Accordingly, limited discovery is needed to ensure that a complete administrative record is presented for the Court's review of the final agency actions at issue in this case.  Plaintiffs request leave of this Court to notice the following limited discovery:

1.     A deposition of a representative of the Defendants, pursuant to Fed. R. Civ. P. 30(b)(6), regarding the manner in which the administrative record was compiled, including the methodology and parameters of any searches performed, the identities of any personnel consulted, and details regarding any documents that were identified but subsequently omitted from the administrative record.

2.     If needed, follow-up requests for production of documents if Plaintiffs determine that Defendants' searches were inadequate or that particular documents were inappropriately excluded from the administrative record.

This discovery will permit some transparency into Defendants' process of compiling the contents of the administrative record.  Such transparency is warranted where, as here, the agency's initial

effort to identify the administrative record was so deficient and involved an apparent attempt to exclude adverse facts.

## IV.    CONCLUSION

For the forgoing reasons, the Plaintiffs respectfully request that the Court require Defendants to supplement the administrative record with the known documents that have been omitted, as described herein, and to perform any necessary searches to ensure that all such documents are identified and included.  Plaintiffs also respectfully request the opportunity to take limited discovery into Defendants' process of compiling the contents of the administrative record, to identify and remedy any additional omissions that may well have occurred.

October 30, 2018                                Respectfully submitted,


/s/ Daniel A. Small
Daniel A. Small (#465094)
Johanna M. Hickman (#981770)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW, Fifth Floor
Washington, DC 20005
Telephone:  (202) 408-4600
dsmall@cohenmilstein.com
jhickman@cohenmilstein.com


Michael C. Davis (#485311)
Margaret K. Kuhn (#1013495)
Venable LLP
575 7th Street, NW
Washington, DC 20004
Telephone:  (202) 344-4000
MCDavis@Venable.com
MKFawal@Venable.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2018, I electronically filed *Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Supplementation of Administrative Record and for Discovery* with the Clerk of the Court using the ECF system, which in turn sent notice to the following:

Jason T. Cohen
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, DC 20530


Dated:    October 30, 2018                    /s/ Daniel A. Small
                                              Daniel A. Small