# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAJOR MATTHEW SEEGER, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 17-639 (RMC) |
| UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs Major Matthew Seeger, Michael Schwartz, Cheryl Bormann, and Edwin Perry are attorneys, military and civilian, employed by the Department of Defense and assigned to represent detainees before military commissions at U.S. Naval Station Guantanamo Bay. They bring this action against the Department of Defense, the U.S. Navy, and the Director of the Office of Military Commissions and Convening Authority under the Administrative Procedure Act, alleging that Defendants arbitrarily and capriciously require Plaintiffs, as part of their duties, to work and in some cases sleep at Camp Justice, which facility is allegedly contaminated with unsafe levels of environmental hazards.

What is at issue right now is not the interesting part of the case. It is, rather, a discovery dispute. Plaintiffs argue that the recently certified Administrative Record, upon which the Court's decision will depend, is incomplete and must be supplemented. Defendants oppose. Although the Parties have resolved some of their disagreements, several outstanding issues remain and Plaintiffs seek additional discovery. Having reviewed the Parties' materials, the Court will grant in part and deny in part Plaintiffs' motion to take discovery and supplement the Administrative Record.

1

# I. BACKGROUND

The facts of the case have not changed since the Court's last opinion, *Seeger v. U.S. Dep't of Def.*, 306 F. Supp. 3d 265 (D.D.C 2018), and so relevant specifics are recounted only briefly.

Camp Justice is a complex at U.S. Naval Station Guantanamo Bay (NSGB) which serves as the location of the Office of Military Commissions Office of the Convening Authority (OMC), part of the Department of Defense (DoD). OMC assigns Plaintiffs housing when their work takes them to NSGB. Often, that housing is located in Containerized Housing Units (CHUs)—air-conditioned trailers—or improved tents. Less frequently, civilian Plaintiffs (*i.e.*, all other than Maj. Seeger) may be assigned to—or independently obtain—housing outside of Camp Justice, including transient-housing townhomes, rooms at Navy Gateway Inns & Suites (NGIS), or the Navy Lodge.

Plaintiffs filed suit alleging in Count One that DoD violated the Administrative Procedure Act (APA) by arbitrarily and capriciously deciding, after an inadequate investigation, that housing at Camp Justice is safe and habitable notwithstanding the recognized presence of certain environmental hazards. Compl. [Dkt. 1] ¶¶ 129-32. Count One survived the government's motion to dismiss. *See Seeger*, 306 F. Supp. 3d 265; 3/30/18 Order [Dkt. 36]. On September 6, 2018, the government certified the Administrative Record (Record) pursuant to an agreed-upon briefing schedule. *See* Notice of Filing Certified Index to the Admin. R. (Notice) [Dkt. 39]. On October 30, 2018, Plaintiffs filed their motion to supplement. Pls.' Mot. for Supplementation of Admin. R. & for Disc. (Mot.) [Dkt. 40]. Since then, the Parties have requested several extensions of time in part to narrow the disputed issues. Although the Parties have successfully resolved some of their disputes, Plaintiffs ask to include five additional sets of documents in the Record:

1. The April 24, 2018 "Draft OMC Housing Policy" and any documents reflecting finalization or implementation of this policy;

2. All requests submitted by or on behalf of the Plaintiffs or their defense team members requesting "hard housing" accommodation and any responses thereto;

3. All documents (created at any time) reflecting the assignment of workspace within Camp Justice to the Plaintiffs' defense team[1];

4. Written orders directing Plaintiffs to report to Camp Justice; and

5. The May 11, 2018 "Memorandum for Convening Authority" regarding the "Draft OMC Housing Policy."

*See* Mot. at 2. Plaintiffs also ask for limited depositions of government personnel involved in the document production, as necessary to determine what other documents may have been omitted from the Record. Finally, Plaintiffs ask the Court to clarify that certain declarations submitted by the government are not part of the Administrative Record.

The matter is now ripe for review.[2]

## II. LEGAL STANDARD

In keeping with the principle that a court sitting to review agency action under the APA does not engage in a *de novo* review of the matter, judicial review is generally limited to the administrative record. *Camp v. Pitts*, 41 U.S. 138 (1973). To facilitate such review, the law

---

[1] The referenced "defense team" refers to the attorney Plaintiffs and their colleagues engaged in representing NSGB Detainees. For simplicity, the Court will incorporate the defense team into the term "Plaintiffs" moving forward.

[2] *See* Mot.; Plaintiffs' Mem. of P. & A. in Supp. of Mot. for Supplementation of Admin. R. & for Disc. (Pls'. Mem.) [Dkt. 40-1]; Defs.' Opp'n to Pls' Mot. for Supplementation of Admin. R. & for Disc. (Opp'n) [Dkt. 48]; Pls.' Reply in Supp. of Mot. for Supplementation of Admin. R. & for Disc. (Reply) [Dkt. 50].

requires that the agency identify and produce the complete administrative record. *NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). That record "properly consists of the materials before the agency and no more nor less," *see Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018), which "includes all materials [the agency] directly or indirectly relied on to make all decisions, not just final decisions." *Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, No. 01-0273, 2002 WL 34724414, at *3 (citing *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 10 (D.D.C. 2001)); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("It is black-letter administrative law that in an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (citations omitted)). "As part of the record, the Court may consider any document that might have influenced the agency's decision and not merely those documents the agency expressly relied on in reaching its final determination." *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) (quotation omitted)). Indeed, to be complete, the record must include "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *Amfac Resorts*, 143 F. Supp. 2d at 12 (citations omitted).

An agency enjoys a presumption of regularity with respect to the administrative record it prepares; as the decisionmaker, it is generally in the best position to identify and compile the record. *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." (citations omitted)). Therefore, to prevail on a motion to supplement or complete the record, a plaintiff

must "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Oceana*, 290 F. Supp. 3d at 78-79 (citations omitted).  If a court finds that the record produced "clearly do[es] not constitute the 'whole record' compiled by the agency," it will order the agency to complete the record.  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (quoting 5 U.S.C. § 706), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23.

### III. ANALYSIS

#### A. The 2018 Draft OMC Housing Policy

Plaintiffs ask to include in the Record the April 24, 2018 Draft OMC Housing Policy, as well as documents reflecting the finalization and implementation of the 2018 Draft OMC Housing Policy.  The government states that the Housing Policy dated May 19, 2011 (2011 Housing Policy), is the "current written direction that addresses where OMC personnel, including the Plaintiffs, are to be housed while working at [Naval Station Guantanamo Bay]." Notice, Ex. 1, Decl. of Wendy A. Kelly Accompanying Certified Index of Admin. R. (Kelly Certification Decl.) [Dkt. 39-1] ¶ 4.  Although not included *in* the certified index of the Record, the 2011 Housing Policy was included *with* the certified index as an attachment to an earlier Declaration provided by Ms. Kelly and the government states that it intended to incorporate the 2011 Housing Policy into the Record by reference.  Opp'n at 7; *see also* Defs.' Opp'n to Pls.' Appl. for Prelim. Injunc. & Mot. to Dismiss Pls.' Compl., Ex. 2, Decl. of Wendy A. Kelly (Kelly MTD Decl.) [Dkt. 9-2].

Plaintiffs contend that the 2018 Draft OMC Housing Policy, which differs in certain respects from the 2011 Housing Policy, is already being implemented (at least in part) and/or informs current and ongoing decisions by OMC regarding Plaintiffs' housing

5

assignments, and thus should be included as part of the Record. In support, Plaintiffs submit a Memorandum for the Convening Authority from Brigadier General John Baker, dated May 11, 2018 which states: "While reference (a) described [the 2018 Draft OMC Housing Policy] as a draft policy and requested input from all interested parties, I was disappointed to learn that your staff appears to have notified NGIS to begin to implement this policy immediately." Mot., Ex. 2, Mem. for the Convening Auth. (Baker Memo) [Dkt. 40-3] at 1 fn. 1. The Baker Memo included an attached email from NGIS that stated that it was "no longer making reservations for OMC personnel's [sic]" because it was "told that all OMC personnel must check with OMC/CLO for their housing assignment's [sic]." Baker Memo at 2.

The government responds merely that the 2018 Draft OMC Housing Policy "has not been finalized or implemented" and that the belief that there is "some sort of implementation of the draft policy is simply incorrect." Opp'n at 7. Anticipating this response, Plaintiffs ask, in the alternative, for discovery to determine whether the 2018 Draft OMC Housing Policy has been finalized or implemented, in whole or in part.

As discussed above, the government enjoys a presumption of regularity when certifying an administrative record. The question, then, is whether the Baker Memo constitutes "concrete evidence" and "reasonable ground" sufficient to determine that evidence considered by the DoD was not included in the Record and overcome that presumption. *Oceana*, 290 F. Supp. 3d at 78-79. The Court finds that it does not.

Without taking away from Brig. Gen. Baker's sincere belief that OMC "*appears* to have notified NGIS to implement [2018 Draft OMC Housing Policy]," Baker Memo (emphasis added), Brig. Gen. Baker does not claim to have personal or certain knowledge regarding the 2018 Draft OMC Housing Policy's implementation, and the Court notes that

6

requiring OMC personnel to make all housing arrangements through OMC seems consistent with the 2011 Housing Policy.  *See* Defs.' Opp'n to Pls.' Appl. for a Prelim. Inj. & to Dismiss Pls.' Compl., Ex. 2, Housing Policy for OMC Personnel at Guantanamo Bay (May 19, 2011) (2011 Housing Policy) [Dkt. 10-2] ("Billeting will be arranged by and through OMC-OPS-S personnel.").  To the extent that OMC did not historically arrange all billeting or allowed for exceptions to its policy, the event referenced in Brig. Gen. Baker's Memo may simply be OMC more strictly enforcing its existing policy.  Although other explanations are possible, the government has affirmed by sworn declaration that the 2011 Housing Policy is the policy being implemented and that the 2018 Draft OMC Housing Policy is not being implemented.  Plaintiffs' evidence—an unspecific statement from the NGIS front desk—is not "concrete" enough to overcome the presumption entitled the government.

For this same reason, Plaintiffs are not entitled to discovery to clarify any ambiguity in the application of the 2018 Draft Housing Policy.  A plaintiff requesting discovery from an agency in an APA case "must make a strong showing—variously described as a 'strong', 'substantial', or 'prima facie' showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record."  *Amfac Resorts*, 143 F. Supp. 2d at 12 (citing *Overton Park*, 401 U.S. at 420).  Potential ambiguity based on only limited evidence is not strong or substantial enough to overcome this burden.

### B. Plaintiffs' "Hard Housing" Requests

Plaintiffs ask to include copies of "[a]ll requests by or on behalf of [Plaintiffs] requesting 'hard housing' accommodation and any responses thereto."  Mot. at 2.  Plaintiffs argue that some of these requests include references to the alleged environmental hazards generally and to this litigation specifically, *see, e.g.*, Mot., Ex. 3, Email Re: Bin 'Atash, GTMO Travel Request for (24 Apr-5 May 18) [Dkt. 40-4], and were clearly before DoD decisionmakers.

7

They also contend that the responses to these requests are decisions by DoD decisionmakers relevant to the merits of this case. The government has agreed to satisfy Plaintiffs' request in part, by supplementing the Record with (1) Plaintiffs' housing requests directly to OMC, but not related documents circulated solely within the Military Commission Defense Organization (MCDO); and (2) documents—including from the MCDO—for those trips as to which NGIS records show that Plaintiffs did not stay in NGIS housing. Opp'n at 9. Plaintiffs remain dissatisfied. As to the first proposal, Plaintiffs see no reason to exclude documents circulated solely within the MCDO which, like OMC, is a part of DoD. As to the second, Plaintiffs argue that they have on occasion paid out-of-pocket for NGIS housing when they were otherwise assigned to Camp Justice and that those housing decisions would be excluded by the government's proposals.[3] Reply at 7-8.

In deciding the government's motion to dismiss, this Court determined that DoD's "housing orders and necessary location of work assignments are the final [agency] actions on which Plaintiffs' claim is based." *Seeger*, 306 F. Supp. 3d at 288. Those orders were informed by the "anticipatory steps" of agency action, whereby agencies "'prepare proposals, conduct studies, . . . and engage in a wide variety of activities that compromise the common business of managing government programs.'" *Id.* (quoting *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006)). That is to say, the government's responses to (*i.e.*, its decisions on) Plaintiffs' requests for hard housing and the documents informing those responses—including the requests themselves—form the core of this lawsuit and their full

---

[3] This also accounts for the government's argument that Plaintiffs' have not always been housed at Camp Justice. *See* Opp'n at 8. In any event, partial relief is not enough to satisfy Plaintiffs' claim.

8

inclusion in the Record is clearly warranted. Without these documents, the Court cannot determine who made the relevant housing decisions much less on what basis.

Defendants will be ordered to supplement the Record with copies of "[a]ll requests by or on behalf of [Plaintiffs] requesting 'hard housing' accommodation and any responses thereto." Mot. at 2.

### C. Camp Justice Workspace Assignments

Plaintiffs ask to include in the Record all documents "reflecting the assignment of workspace within Camp Justice to [Plaintiffs]." Mot. at 2. In response, the government states that no written directions specifying Plaintiffs' workspace were issued during or after the development of the Final Health Report. *See* Kelly Certification Decl. ¶ 8. Plaintiffs argued that decisions documenting their workspace assignments *prior to* the Final Health Report should be included in the Record because those earlier decisions have not changed and so continue to control. The government then agreed to stipulate "that the designated work areas for military commissions defense counsel at NSGB . . . have not changed." Opp'n at 9. Plaintiffs insist, in Reply, that documents reflecting the decision process before issuance of the Final Health Report are necessary to show how those earlier decisions were made. Reply at 10.

Plaintiffs' remaining litigable claim is that the Final Health Report and the corresponding environmental remedies adopted by Defendants are insufficient bases for the government to determine that OMC housing at NSGB is safe for habitation (work or sleep). The Final Health Report was prompted by Navy's recognition that there were environmental issues associated with long-term exposure to conditions inside the CHUs. Whether the Final Health Report addressed previously-recognized problems and complaints, and satisfactorily resolved them, cannot be determined without information on the nature of those problems and complaints.

The government will be ordered to supplement the Record with all documents "reflecting the assignment of workspace within Camp Justice to [Plaintiffs]." Mot. at 2.

### D. Orders to Report to Camp Justice

Plaintiffs similarly ask to include in the Record all written orders directing Plaintiffs to report to Camp Justice, including orders from military commission judges setting hearings which might require the attendance of defense counsel. *Id*. at 2. Plaintiffs seek this evidence to rebut any suggestion by the government that Plaintiffs are requesting permission to travel to Camp Justice voluntarily, instead of being ordered or compelled to do so. The government responds that while "OMC rules of court simply state that all defense counsel who have entered an appearance in a case should attend all sessions of that case," no order issued by a military commission judge specifies Plaintiffs' housing and work accommodations and therefore no order is relevant to this case. Opp'n at 10.

The government's stipulation—combined with the forthcoming production of Plaintiffs' requests for hard housing—is enough to establish that Plaintiffs are not *sua sponte* requesting permission to travel to Camp Justice, even if they might initiate travel requests. The Court well appreciates that when a judge orders a hearing, representatives for the litigants are expected to appear. No supplementation to the Record is needed.

### E. May 11, 2018 Memorandum for the Convening Authority

Plaintiffs ask to include the May 11, 2018 Memorandum for the Convening Authority submitted by Brig. Gen. Baker, which was referenced above with regards to the 2018 Draft OMC Housing Policy. Plaintiffs argue that the Baker Memo was before government decisionmakers and lends greater weight to Plaintiffs' health risks when stacked against the government's operational needs. Pls.' Mem. at 10-11. The government responds again that the

2018 Draft OMC Housing Policy has not been finalized and argues that the Baker Memo is pre-decisional, deliberative, and irrelevant. Opp'n at 10.

The Baker Memo informs two agency actions. The first is the 2018 Draft OMC Housing Policy, which is not final and so is pre-decisional. To the extent that the Baker Memo functions as a comment to the proposed policy, it does not yet inform a *final* agency action and so is irrelevant to this case. However, to the extent that the Baker Memo discusses the negative consequences of currently implementing the 2018 Draft OMC Housing Policy, the government has already clarified that that policy is not being implemented, which must mean that the Baker Memo is actually discussing the negative consequences of implementing the 2011 Housing Policy. In this context, the Baker Memo informs the ongoing agency decision to assign Plaintiffs to housing at Camp Justice, which is not pre-decisional. Accordingly, it is appropriate to include it in the Record.

### F. Discovery

Plaintiffs ask to take "limited discovery into the process by which Defendants prepared and certified the administrative record." Reply at 11. To reiterate, "absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity that it properly designated the administrative record." *Pac. Shores Subdiv.*, 448 F. Supp. 2d at 5. Thus, when a plaintiff asks to supplement an administrative record *and* take discovery, that plaintiff "must make a strong showing—variously described as a 'strong', 'substantial', or 'prima facie' showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Amfac Resorts*, 143 F. Supp. 2d at 12 (citing *Overton Park*, 401 U.S. at 420). There is no such showing here and Plaintiffs' request for discovery will be denied.

Plaintiffs further urge the Court to ignore all declarations submitted by the government. "It is well settled that judicial review of agency action is normally confined to the

11

full administrative record before the agency at the time the decision was made." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir 1981). A court will not accept by declaration post-hoc rationalizations of the agency's decision-making. *See Overton Park*, 401 U.S. at 420. However, when the administrative record reveals "a failure to explain administrative action [so] as to frustrate effective judicial review," a court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary." *Camp*, 41 U.S. at 142-43. Agency affidavits and even testimony may be appropriate when they are "merely explanatory of the original record and . . . contain no new rationalizations." *Envtl. Def. Fund*, 657 F.2d at 285. In that context, the government may submit agency declarations for consideration and Plaintiffs may, if they think the government offers a post-hoc rationale, object.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Supplementation of Administrative Record and for Discovery, Dkt. 40, will be granted in part and denied in part. In addition to those documents and facts already stipulated to, Defendants will be required to supplement the Administrative Record with:

- All requests submitted by or on behalf of the Plaintiffs or their defense team members requesting "hard housing" accommodation and any responses thereto;

- All documents (created at any time) reflecting the assignment of workspace within Camp Justice to the Plaintiffs' defense team; and

- The May 11, 2018 "Memorandum for the Convening Authority" regarding the "Draft OMC Housing Policy," submitted by Brigadier General John Baker on behalf of Plaintiffs.

Plaintiffs' motion to take deposition discovery will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: May 9, 2019

ROSEMARY M. COLLYER
United States District Judge